UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JEANNE DENNIS, RENEE PELECHOWICZ, AND JILL MOSHER,<br><br>Plaintiffs,<br><br>vs.<br><br>ANNA JAQUES HOSPITAL,<br><br>Defendant. | Civil Action No. _____ |

## NOTICE OF REMOVAL
### (FEDERAL QUESTION AND DIVERSITY JURISDICTION)

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that Defendant Anna Jaques Hospital ("Anna Jaques") hereby removes to this Court the state court action described below. Removal is based on (1) federal question jurisdiction in that Plaintiffs' claims are preempted under Section 301 of the Labor Management Relations Act (the "LMRA") because their claims are intertwined with the collective bargaining agreement that governs their employment; and (2) diversity jurisdiction. More specifically, Anna Jaques states as follows:

### BACKGROUND

1. On October 17, 2018, plaintiffs Jeanne Dennis, Renee Pelechowicz, and Jill Mosher (collectively, "Plaintiffs") filed the Complaint in the Commonwealth of Massachusetts Trial Court, Superior Court Department for Essex County (the "State Court Action"). The State Court Action was assigned Civil Action No. 1887CV01522A. A copy of the Complaint is attached as Exhibit A.

2. Defendant Anna Jaques was served with a copy of the Complaint on October 29,

2018.

3. According to the Complaint, each of the Plaintiffs is a resident of the state of New Hampshire, while Anna Jaques is located in Newburyport, Massachusetts. See Compl. at ¶¶ 3-6.

4. Although Plaintiffs nowhere mention it in their Complaint, Plaintiffs are members of a collective bargaining unit whose terms and conditions of employment are governed by a collective bargaining agreement ("CBA") between Anna Jaques and the Massachusetts Nurses Association. A true and accurate copy of the CBA is attached hereto as Exhibit B.[1]

## STATUTORY REQUIREMENTS

5. Removal of this case is proper pursuant to 28 U.S.C. § 1441(a), which entitles a defendant to remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 (federal question) and § 1332 (diversity jurisdiction).

6. The District Court for the District of Massachusetts is the district and division embracing the place where the State Court Action is pending. Venue is appropriate because Anna Jaques is located in Newburyport, Massachusetts, and a substantial part of the events or omissions giving rise to the claims occurred in Newburyport. See 28 U.S.C. § 1391(a)(1)-(2).

## THIS COURT HAS FEDERAL QUESTION JURSIDCTION UNDER SECTION 301 OF THE LABOR MANAGEMENT RELATIONS ACT

7. The Complaint is based on allegations that the Plaintiffs, who worked as nurses on the overnight shift in Anna Jaques's psychiatric unit, "have not been paid for any so-called

---

[1] The CBA, on its face, is dated December 31, 2012 through December 31, 2014. However, the CBA includes a Memorandum of Agreement that extended the CBA through December 31, 2017 and another Memorandum of Agreement extending the CBA through December 31, 2020. Each Memorandum of Agreement extends the CBA, subject to the revisions and changes agreed upon during the round of collective bargaining that resulted in the Memorandums of Agreement. Exhibit B includes (at the end of the exhibit) the Memorandum of Agreement, dated January 12, 2015, that extended the CBA through December 31, 2017, which covers the majority of the time period covered by Plaintiffs' claims. Anna Jaques is in the process of locating a signed version of the Memorandum of Agreement that extended the CBA through December 31, 2020 and will supplement Exhibit B shortly.

'30-minute meal breaks' that they worked through and were not relieved of their work-related duties within the three years preceding the filing of this complaint through approximately mid to late September 2018." Ex. A, Compl. ¶ 25.  Plaintiffs assert the failure to pay them for this time constitutes a violation of the Massachusetts Wage Act, G.L. c. 149, § 148.  *Id.* ¶ 27.

8.  Plaintiffs seek to recover unpaid wages, treble damages, plus interest and their reasonable attorney's fees and expenses.  *Id.* at ¶28.

9.  While Anna Jaques disputes the allegations in the Complaint, the allegations nevertheless form the basis for removal analysis because jurisdiction is normally ascertained from the face of the state court complaint.  *See Danca v. Private Health Care Sys., Inc.*, 185 F.3d 1, 8 (1st Cir. 1999).  "Where a claim, though couched in the language of state law, implicates an area of federal law for which Congress intended a particularly powerful preemptive sweep, the cause is deemed federal no matter how pleaded."  *Id.*  "This exception to the well-pleaded complaint rule is called 'complete preemption.'"  *Id.* at 9; *see also Cavallaro v. UMass Memorial Healthcare, Inc.*, 678 F.3d 1, 5-7 (1st Cir. 2012).  Under the doctrine of complete preemption, "[i]f a federal cause of action completely pre-empts a state cause of action, any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law."  *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987), quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 24 (1983).  Thus, "any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar*, 482 U.S. at 393.

10.  Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, possesses this preemptive force.  *See Franchise Tax Bd.,* 463 U.S. at 23.  Thus, "[i]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state

law . . . is pre-empted." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405-06 (1988); *Haggins v. Verizon New England, Inc.*, 648 F.3d 50, 54-57 (1st Cir. 2011); *Filbotte v. Pennsylvania Truck Lines, Inc.*, 131 F.3d 21, 26 (1st Cir. 1997); *Cavallaro*, 678 F.3d at 7; *Arnstein v. MVM, Inc.,* No. 12-10666, 2012 WL 4863043, at *6 (D. Mass. Oct. 12, 2012). "Such preemption is intended to ensure uniform interpretation of CBAs throughout the nation." *Arnstein*, 2012 WL 4863043, at *6.

11. The First Circuit has identified two ways in which a state law claim may "depend" on a collective bargaining agreement resulting in LMRA preemption. First, a state law claim is preempted if "'it alleges conduct that arguably constitutes a breach of a duty that arises pursuant to a collective bargaining agreement.'" *Haggins*, 648 F.3d at 55, quoting *Filbotte*, 131 F.3d at 26. Second, preemption applies if "its resolution arguably hinges upon an interpretation of the collective bargaining agreement." *Id*. If either standard is met, the state law claim is preempted. *Id*.

12. The preemptive force of Section 301 of the LMRA extends not only to standard breach of contract claims, but also to other theories of recovery based on state laws. *See Cavallaro*, 678 F.3d at 7 ("we have continued to treat state statutory claims in the economic area as preempted where they were intertwined with the CBA.")), citing *Adames v. Exec. Airlines, Inc.*, 258 F.3d 7, 12-16 (1st Cir. 2001) (further citations omitted)); *Arnstein*, 2012 WL 4863043, at *6. For example, in *Cavallaro*, the First Circuit held that state law wage claims for work performed during meal breaks, during training sessions, and before and after shifts, were preempted by Section 301. *Cavallaro*, 678 F.3d at 7. Similarly, in *Arnstein*, relying on *Cavallaro*, the Court held that plaintiffs' state law claims for payments for work performed during meal breaks would require interpretation of several terms of their CBA, and thus were preempted by Section 301. *Arnstein*,

4

2012 WL 4863043, at *6.

13. To address Plaintiffs' claims, the Court must analyze and interpret the CBA, the duties and obligations of the parties under the CBA, as well as any practices or implied contractual provisions or obligations between the parties that have – or have not – expressly been incorporated into the CBA over time, thus bringing the Complaint under Section 301 of the LMRA.

14. The CBA contains detailed provisions governing payment of wages, meal periods, premium pay, shift differential pay, charge pay, as well as other procedures and requirements, relevant to this action, including but not limited to:

**Article II Wages and Differentials**

Section 1. Wages (and Appendix A)

The CBA includes a salary scale schedule setting forth different wages for different employees covered by the CBA based on their "category" and "step," including a process for advancing steps.

Section 3. Shift Differential

A nurse working three (3) or more hours on the night shift, 11:00 p.m. to 7:30 a.m., including one who works from the evening shift into the night shift, will be paid seven dollars ($7.00) per night shift hour in addition to the regular hourly pay.

Section 7.  Charge Pay

A staff nurse who is in charge of a floor in the absence of a Director shall receive charge pay…

**Article III Hours of Work**

Section 1. Hours of Work

The regular work week shall be forty (40) hours within a calendar week. The regular work day shall be eight (8) hours plus a one-half (1/2) hour meal period. The regular day shift shall be 7:00 a.m. to 3:30 p.m.; the regular evening shift shall be 3:00 p.m. to 11:30 p.m.; and the regular night shift shall be 11:00 p.m. to 7:30 a.m. Shifts other than these may be

necessary. The Hospital will notify the Association of the need or changes in the hours of work on specific units or in specific departments prior to implementation.

Section 2. Overtime

All work performed in excess of eight (8) hours in a day or forty (40) hours in a week, shall be paid for at the rate of one and one-half (1½) times the nurse's straight rate of pay. If the Hospital requires nurses to work overtime on a mandatory basis, it will assign such overtime on a rotating reverse seniority basis to the extent that operations allow. If a part time nurse is required to work at least two hours in excess of her regular shift, and the excess work is on a holiday or immediately thereafter, she will be paid the holiday rate for regular part-time nurses for hours worked on the holiday or immediately thereafter and not at the rate of one and one-half times her regular hourly rate of pay. If a part-time nurse is scheduled to work a holiday, and is required to work on to the next shift, she will be paid at the rate of one and one-half times her regularly hourly rate of pay for the ensuing hours. A nurse working mandatory overtime will work a maximum of eight (8) hours in each calendar quarter and no more than four (4) hours in any mandatory assignment. The nurse may refuse to work mandated overtime if in her judgment she cannot safely accept the assignment, but the nurse will take the next overtime assignment that is required.

**Article XII Grievance and Arbitration**

Section 2. Grievance

Any complaint involving the interpretation or application of the Agreement shall be deemed a grievance and must be initiated in writing under the procedures provided herein within thirty (30) business days after the facts or events occurred which the nurse or Association should have reasonably known about except those grievances involving discipline shall be initiated within ten (10) business days of the imposition of said discipline.

Section 3. Arbitration

If the grievance is not resolved in the foregoing sections of this Article, either party may submit the matter to arbitration within thirty (30) calendar days after the expiration of the time limit set forth in Step 3. The party desiring arbitration shall notify the other party and they shall thereupon attempt to agree upon an arbitrator. In the event that the parties cannot reach agreement, the grievance shall be submitted to the American Arbitration Association under its voluntary labor arbitration rules and regulations. The decision of the arbitrator shall be final and binding on all of the parties. The cost of the arbitration assessed by the American Arbitration Association and the arbitrator shall be borne equally by the parties

*See* Ex. B.

15. Through creative pleading, and by strategically omitting referencing the CBA, Plaintiffs here try to obscure the fact that their claims implicate provisions of the CBA. However, Plaintiffs cannot avoid the preemptive force of Section 301 of the LMRA by ignoring the CBA. *See Cavallaro*, 678 F.3d at 9-10 ("The interrelationship of the state claims and the CBA cannot be avoided merely by refusing to identify the CBA in the complaint and citing the well pleaded complaint rule."). Although Plaintiffs do not refer to the CBA, Plaintiffs allege conduct that implicates the CBA, including but not limited to the following:

- Plaintiffs allege that they are registered nurses at Anna Jacques who worked on the overnight shift from 11:00 p.m. to 7:30 a.m. in the psychiatric unit. *See* Ex. A, Compl. ¶¶7-12.

- Plaintiffs allege that "[f]or the duration of each Plaintiffs' employment on the overnight shift within the three years preceding the filing of the complaint in this matter through approximately mid to late September 2018, the Defendant deducted 30 minutes of pay from each Plaintiffs' daily compensation for a so-called 30-minute meal break." *Id*. at ¶14.

- Plaintiffs allege that "for each overnight shift that each Plaintiff worked within three years preceding the filing of the complaint in this matter through approximately mid to late September 2018, the Defendant paid the Plaintiffs for 8 hours of work, even though the shift was 8.5 hours." *Id*. at ¶15.

- Plaintiffs allege that "[f]or the duration of each Plaintiff's employment on the overnight shift within the three years preceding the filing of the complaint in this matter through approximately mid to late September 2018, the Plaintiffs were not relieved of all work-related duties during their so-called 30-minute meal break. *Id*. at ¶16.

- Plaintiffs' allege that for the relevant time frame they "performed all their general job duties for the entire 8.5-hour shift and would eat a meal 'on the go.'" *Id*. at ¶17

- Plaintiffs' allege that "as of the date of the filing of this Complaint, the Plaintiffs have not been paid for any so-called '30-minute meal break' that they worked through and were not relieved of their work-related duties…." *Id*. at ¶25

16. The Complaint is preempted because it "alleges conduct that arguably constitutes a breach of a duty that arises pursuant to a collective bargaining agreement." *Haggins*, 648 F.3d

at 55, quoting *Filbotte*, 131 F.3d at 26; *see also Reyes v. S.J. Servs., Inc.*, No. CIV.A. 12-11715-DPW, 2014 WL 5485943, at *9 (D. Mass. Sept. 22, 2014).  For example, the CBA mandates "meal periods" for employees and requires time-and-a-half premium pay for "work performed in excess of eight (8) hours in a day."  *See* Ex. B., Art. III, §§ 1-2.  The Complaint alleges in substance that Anna Jaques failed to provide Plaintiffs with their contractually mandated "meal periods" and failed to pay them the contractually required premium pay for working shifts of 8.5 hours rather than 8 hours.  *See* Ex. A, Compl, ¶¶14-16.

17. The Complaint is preempted for the additional reason that resolving Plaintiffs' claims will require interpreting the CBA to determine, *inter alia*:

- the definitions of and what constitutes "work" and a "meal period" under the CBA;

- Whether Plaintiffs "worked" through their "meal period" within the meaning of the CBA;

- Whether Plaintiffs received their "meal period" under CBA, Art. III, § 1;

- Whether the alleged violations resulted in "work performed in excess of eight (8) hours in a day" for Plaintiffs necessitating premium pay under CBA, Art. III, § 2 for the extra half hour they allegedly worked each shift;

- The calculation of wages allegedly owed to each plaintiff based on their particular category and step and the applicability of premium, shift differential pay, or charge pay, or some combination thereof, to the shifts they worked; and

- Whether any premium pay or shift differentials paid to Plaintiffs may offset any amounts allegedly owed to Plaintiffs for working through their meal periods.

*See Cavallaro*, 678 F. 3d at 7; *Adames*, 258 F.3d at 14-16; *Hamilton v. Partners Healthcare Sys., Inc.*, 209 F. Supp. 3d 397, 410-11 (D. Mass. 2016); *Arnstein*, 2012 WL 4863043, at *6; *Clee v. MVM, Inc.*, 91 F. Supp. 3d 54, 63-64 (D. Mass. 2015); *Reyes*, 2014 WL 5485943, at *9.

17. Given the foregoing, and in accordance with authority cited above, this Court has federal question jurisdiction of this case under 28 U.S.C. § 1331.

## THIS COURT HAS DIVERSITY JURISICTION

18. According to the Complaint, Plaintiff Jeanne Dennis is a citizen of New Hampshire. *See* Compl. ¶ 3.

19. According to the Complaint, Plaintiff Renee Pelechowicz is a citizen of New Hampshire. *See* Compl. ¶ 4.

20. According to the Complaint, Plaintiff Jill Mosher is a citizen of New Hampshire. *See* Compl. ¶ 5.

21. Anna Jaques is located in Newburyport, Massachusetts. *See* Compl. ¶ 6.

22. Although Anna Jaques denies any liability to Plaintiffs and denies that Plaintiffs are entitled to any relief, the Complaint on its face alleges claims that place in controversy more than $75,000, inclusive of mandatory treble damages and attorneys' fees under the Massachusetts Wage Act, and exclusive of interests and costs. *See* 28 U.S.C. § 1332(a).

## COMPLIANCE WITH PROCEDURAL REQUIREMENTS

23. Anna Jaques seeks to remove this action to the proper court. The State Court Action is pending in Superior Court in Essex County, which is within the district of this Court. *See* 28 U.S.C. § 1446(a).

24. This Notice of Removal is timely because Anna Jaques filed it within 30 days of receiving a copy of the initial pleading setting forth the claim for relief upon which this action is based. *See* 28 U.S.C. § 1446(b).

25. Pursuant to Local Rule 81.1(a), within 28 days of filing this Notice, Anna Jaques will file certified or attested copies of all records and proceedings in the state court and a certified or attested copy of all docket entries in the state court.

26. Anna Jaques has paid the appropriate filing fee to the Clerk of this Court upon

filing of this Notice.

27.     Attached as <u>Exhibit C</u> is a copy of the Notice of Filing of Notice of Removal, which will promptly be served upon Plaintiffs' counsel of record and filed with the Commonwealth of Massachusetts Trial Court, Superior Court Department for Essex County.  *See* 28 U.S.C. § 1446(d).

28.     The Notice of Removal is signed pursuant to Fed. R. Civ. P. 11.  *See* 28 U.S.C. § 1446(a).

29.     Anna Jaques reserves the right to raise all defenses and objections in this action after it is removed to this Court.

          Respectfully Submitted,

          **ANNA JAQUES HOSPITAL**

          By its Attorneys,

/s/ *Michael C. Birch*
Michael C. Birch (BBO #679976)
   *mbirch@hrwlawyers.com*
Peter J. Moser (BBO #567593)
   *pmoser@hrwlawyers.com*
Charlotte M. Petilla (BBO #671126)
   *cpetilla@hrwlawyers.com*
Hirsch Roberts Weinstein LLP
24 Federal Street, 12th Floor
Boston, MA 02110

Dated: November 27, 2018    (617) 348-4300

## CERTIFICATE OF SERVICE

I hereby certify that the above document has been served upon counsel of record by e-mail and firs class mail on November 27, 2018.

          /s/ *Michael C. Birch*
          Michael C. Birch